**United States District Court**
For the Northern District of California

**E-FILED on   3/10/2009____**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STOTT OUTDOOR ADVERTISING, a California General Partnership,<br><br>             Plaintiff,<br><br>      v.<br><br>COUNTY OF MONTEREY, and DOES 1-100, inclusive,<br><br>             Defendants. | No. C-06-00891 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 71, 86]** |

The parties have filed cross-motions for summary judgment.  Plaintiff Stott Outdoor Advertising ("Stott") moves for summary judgment as to its first and second claims that defendant County of Monterey's (the "County") ordinance regarding permits for the erecting of billboards constitutes a prior restraint on speech and restricts commercial and non-commercial speech in violation of the First Amendment of the United States Constitution.  Plaintiff also seeks summary judgment on its third claim that it was denied procedural due process in violation of its Fourteenth Amendment rights under the United States Constitution.  The County moves for summary judgment as to all eight of Stott's claims on the grounds that this action has been rendered moot by a recent interim ordinance that bans all billboards and that the County's ordinance and the denial of Stott's

permit applications did not constitute violations of the First Amendment. Each party opposes the other party's motion. The court has read the moving and responding papers. For the reasons set forth below, the court GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.

## I. BACKGROUND

Stott is engaged in the outdoor advertising business. Decl. of Jim Moravec Supp. Pl.'s Mot. Summ. J. ("Moravec Decl."), ¶ 3. Stott generally leases property, constructs and erects an outdoor advertising structure, and then sells the space to the public for advertising. *Id.* ¶ 4. The signs may be used to convey both commercial and noncommercial messages, and the contents of the messages change periodically, typically one to three times a year. *Id.* ¶¶ 4-5.

As part of its efforts to erect advertising billboards in Monterey County, Stott entered into three ground leases for property upon which it intended to build billboards. Decl. of Brian Daubert Supp. Pl.'s Mot. Summ. J. ("Daubert Decl."), ¶ 2. The first parcel is adjacent to Highway 68, approximately one mile west of the City of Salinas (the "Eastman Property"), the second parcel is along Highway 101 south ("Borba Property"), and the third is along Highway 101 north ("Tannahill Property"). *Id.* ¶ 5. According to Stott's applications, the Eastman Property billboard would be "an illuminated outdoor advertising sign with back to back 10'6" x 36' faces supported by a single sign pole with an overall height of 35'." *Id.* at Ex. A. The Borba Property billboard would be "an illuminated outdoor advertising sign with 10' x 40' back to back sign faces with an overall height of 35' supported by a single sign pole reading to traffic on Highway 101." *Id.* at Ex. O. The Tannahill Property billboard would be "an illuminated outdoor advertising sign with back to back 10'6" x 36' faces supported by a single sign pole with an overall height of 35'. *Id.* at Ex. T.

A permit was needed at the time of Stott's applications needed in order to construct an off-site outdoor billboard in Monterey County. *See* Def.'s RJN, Ex. A at § 21.74. Section 21.74.050 provides in relevant part that before issuing a use permit, the findings of the Appropriate Authority shall be that:

> The establishment, maintenance, or operation of the use or structure applied for, will not, under the circumstances of the particular case, be detrimental to health, safety, peace, morals, comfort, and general welfare of persons residing or working in the

**United States District Court**
For the Northern District of California

neighborhood of such proposed use; or be detrimental or injurious to property and improvement in the neighborhood; or to the general welfare of the County.

Def.'s RJN, Ex. A § 21.74.050.

### A.      Eastman Property Billboard

The County's Planning Department conducted a preliminary review of the Eastman Property and Borba Property locations and indicated that the County would accept applications for billboards on those locations. *Id.* ¶ 6. Stott then prepared applications for billboards on all three locations. *Id.* The three applications were processed and set for separate hearings. *Id.* Therese Schmidt ("Schmidt"), a senior planner in the County's Building and Inspection Department advised Stott that she was recommending approval of the Eastman Property application. *Id.* ¶¶ 7, 9. Stott also received a staff report from the County's Planning Department which indicated that approval would be recommended by the staff. *Id.* ¶ 9, Ex. D.

Thereafter, Schmidt requested a continuance of the scheduled hearing in order to contact and receive comments from the City of Salinas and CalTrans regarding the project. *Id.* ¶ 11. A second staff report from the Planning Department prepared in advance of the hearing indicated that the staff would recommend a denial of the project. *Id.* ¶ 12. The second report noted that the project is "in close proximity to the scenic corridor and would detract from the visually sensitive transition from urban development to rural open space while traveling on Highway 68." *Id.* ¶ 13. The report recommended a finding that the site was not suitable for the proposed use partially because of the "negative impacts of the aesthetics of the City's established 'gateway'" and the close proximity to the scenic corridor. *Id.* ¶ 14.

On December 8, 2004 the Planning Commission held a hearing on the Eastman Property application. *Id.* ¶ 21. No persons living or working near the property spoke in opposition of the application. *Id.* Several commissioners commented that they were opposed to billboards under any circumstances. *Id.* The Commission denied the application. *Id.* Stott then appealed the denial to the Board of Supervisors ("Board"). The Board held a hearing on March 1, 2005. An official with the City of Salinas spoke in opposition to the application. *Id.* ¶ 23. No other person spoke in opposition to the application, although several supervisors expressed opposition to new billboards in

1    the County.  *Id.*  The Board denied the appeal.  *Id.*

2          **B.     Borba Property Application**

3          During the processing of Stott's Borba Property application, Schmidt informed Stott that her

4    tentative decision was to recommend approval of the project.  *Id.* ¶ 25.  The Planning Department's

5    staff report sent to Stott in advance of the Planning Commission hearing indicated that the staff

6    recommended denial of the project on the basis that the area is designated as a proposed scenic

7    highway.  *Id.* ¶ 26.  On February 23, 2005 the Planning Commission held a hearing on the proposal.

8    The Commission denied the application.  *Id.* ¶ 28.  Several commissioners expressed their

9    categorical opposition to billboards in the County.  *Id.*  Stott appealed the denial to the Board, which

10   held a hearing on May 3, 2005.  *Id.* ¶ 29.  The Board denied the appeal.  *Id.*

11         **C.     Tannahill Property Application**

12         Comments regarding the Tannahill Property Application were solicited and obtained from

13   CalTrans.  *Id.* at Ex. Z.  CalTrans indicated that the placing of any display visible from a state or

14   interstate highway required a permit from CalTrans.  *Id.*  The Planning Department's staff report was

15   issued prior to the Planning Commission hearing indicated that the staff recommended approval of

16   the project with certain conditions.  *Id.* ¶ 31.  These conditions included (1) obtaining an outdoor

17   advertising permit from CalTrans, (2) submitting revised plans showing a reduction of the billboard

18   from 35' to 25' in height, (3) setting hours of operation for the lighting to be from dusk to midnight,

19   (4) indemnifying the County and its employees and agents from any claim attacking the approval of

20   the application, and (5) recording a notice indicating that the property use is subject to the foregoing

21   conditions which run with the land.  *Id.* at Ex. Z.  In addition, the staff recommended that the

22   application be approved with the additional condition that the permit would be granted only for 2

23   years, to expire April 27, 2007.  *Id.*  The Planning Commission denied this application and Stott's

24   subsequent appeal to the Board was also denied.  *Id.* ¶ 34.

25         **D.     Ordinance 5069**

26         On May 8, 2007 the County adopted an interim ordinance banning all new billboards

27   ("Ordinance 5069").  Decl. Dale Ellis Supp. Def.'s Mot. Summ. J. ("Ellis Decl."), ¶ 9.  As an interim

28   ordinance adopted through an urgency measure, Ordinance 5069 was valid only for forty-five days

after adoption, subject to two possible extensions for up to a maximum of two years.  On June 19, 2007 the Board adopted Interim Ordinance 5072, which extends Ordinance 5069 for an additional period of ten months and fifteen days.  *Id.* ¶ 10.  According to the text of Ordinance 5069, the ban is to remain in effect "pending the final resolution of the June 2007 election ballot measures related to Monterey County's 2006 General Plan and the Community General Plan."  Def.'s Req. Judicial Notice Opp'n Pl.s' Mot. Summ. J. ("Def.'s RJN"), Ex. B.

The County's 1982 General Plan includes the following policy: "The placement of off-site advertising shall be discouraged due to visual clutter, scenic intrusion, and safety concerns, and may be considered only within the County's retail, general commercial, and industrial zoning districts.  Ellis Decl. ¶ 5.  The adoption of Ordinance 5069 follows what appears to be a trend by the County in modifying the 1982 General Plan to increasingly restrict outdoor, off-site advertising since the adoption of the 1982 General Plan.  *See id.* ¶¶ 6-8.  In January 2007 the County adopted an updated General Plan (the "2006 General Plan") with a policy more restrictive of outdoor, off-site advertising than the 1982 General Plan.  *Id.* ¶ 8.  The 2006 General Plan has been challenged in court and through the referendum process.  *Id.*

One of the reasons Ordinance 5069 was adopted appears to be the possibility that the 2006 General Plan might be repealed.  After the County adopted the 2006 General Plan, the Board placed a measure on the June 2007 ballot asking whether the Plan should be repealed.  Def.'s RJN, Ex. B.  At the same time, local citizen groups have placed by referendum a similar measure on the June 2007 ballot asking whether voters should approve the Plan.  *Id.*  In addition, citizen groups have proposed an alternative Community General Plan and have placed a measure on the June 2007 ballot for adoption of the Community General Plan.  *Id.*  Although the Board recognizes that pending the resolution of the ballot measures, the 1982 General Plan remains the operative plan, the Board nevertheless notes that an interim ban on all billboards should be adopted to avoid potential inconsistencies between permit actions and the 1982 General Plan prior to the resolution of the issues in the June 2007 ballot.  Although the County did not submit any facts regarding the results of the June 2007 vote, it mentions in its moving papers that "[t]he results are inconclusive and confusing, and will almost certainly produce litigation."  Def.'s Mot. Summ. J. at 6:19-20.  Neither

1   party, despite some later filings, has indicated what the current status of Ordinances 5069 and 5072

2   or their replacements, if any, are.  The court considers the issues based upon the facts as set forth in

3   the briefing before the court.

4          The text of Ordinance 5069 indicates that it was enacted also to permit the Board time to

5   study and consider "land use actions and mitigation measures" and to "promote and protect the

6   public health, safety, and welfare, . . . and community esthetics and visual environment of Monterey

7   County from the visual clutter which billboards inevitably cause." *Id.*  Further, "there is a current

8   and immediate threat to the public health, safety, and welfare in general, and in particular to the

9   visual environment of Monterey County." *Id.*  Although unclear, the ordinance suggests that this

10  "immediate" harm stems from the possibility that the approval of use permits for billboards might be

11  inconsistent with the pending general plan ballot measures because such approvals would allow the

12  "erection of permanent structures that by their very nature cause esthetic harm."

13         The County indicates that it will re-evaluate its regulations for signs after it is determined,

14  based on the outcome of the June 2007 election.  *Id.*  However, the Board's express intent is to

15  continue the ban on new billboards through the new ordinance, whatever the result of the June 2007

16  measures and that the County has no intention to return to "a sign regulation system in which new

17  billboards are allowed or tolerated, either as a matter of right or subject to discretionary review

18  and/or conditions." *Id.*

19         In addition to the adoption of Ordinance 5069, the County directed its planning staff to

20  continue working on a new sign regulation ordinance that would, *inter alia*, prohibit any new off-site

21  advertising sign greater than 24 square feet in size.  Ellis Decl., ¶ 9.  The County is working on a

22  proposed ordinance that is consistent with Ordinance 5069.  *See* Decl. of Mike Novo Supp. Def.'s

23  Mot. Summ. J., Ex. A at 21.60.060(J).  Ordinance 5069 does not affect billboards which already

24  legally exist in the County, billboards for which a valid permit has been issued and not yet expired,

25  and the change of message or graphic display on any presently, existing legal billboards.  Def.'s

26  RJN, Ex. B.  Further, the ordinance does not bar agreements to relocate presently existing legal

27  billboards.  *Id.*

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT                                                                      6

# II. ANALYSIS

## A.    Legal Standard

Summary judgment is granted if there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In a motion for summary judgment, the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, the Ninth Circuit elaborated:

> In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.
>
> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial.  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense.  If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.

210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted).

## B.    Mootness

The County moves for summary judgment in its favor on the basis that Stott's action has been rendered moot by the County's May 8, 2007 adoption of Ordinance 5069.  In particular, Ordinance 5069 prohibits the processing or issuance of any new or pending permit applications for new billboards.  Stott argues that because Ordinance 5069 was enacted as an emergency measure essentially to frustrate its plans to obtain a permit and construct three billboards in Monterey County, it is invalid.  Further, Stott contends that because Ordinance 5069 is only an interim ordinance placing a temporary moratorium on new billboards, the alleged conduct may occur again.  The parties also dispute whether plaintiff obtained any vested rights in its applications.

"Mootness is the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(mootness)."  *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994) (internal quotations and citation omitted).  "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).  "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Id.*

"A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.  As a general rule, if a challenged law is repealed or expires, the case becomes moot."  *Native Village of Noatak*, 38 F.3d at 1510.  Further, there are only rare exceptions to this general rule.  *Id.*  Such exceptions "typically involve situations where it is virtually certain that the repealed law will be enacted."  *Id.; see, e.g., City of Mesquite v. Alladin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (finding that case not rendered moot by new ordinance where city had previously amended an ordinance but subsequently reverted to the old regulations once the state court judgment issued and had announced that it was not prohibited from reenacting precisely the same provision if the district court's judgment was vacated).

### 1.    Temporary Nature of Ordinance 5069

Stott first argues that because Ordinance 5069 is only an interim ordinance, there is a likelihood that the County will revert to the allegedly unconstitutional sign ordinance in place prior to Ordinance 5069.  In other words, plaintiff contends Ordinance 5069 is nothing more than a moratorium on the allegedly unconstitutional County sign regulation.  The court finds that in light of all the facts in the record, this argument is not persuasive.  Although Ordinance 5069 is only an interim ordinance, which has an initial term of forty-five days and may be extended for up to two years, the accompanying text of the ordinance indicates that the purpose of Ordinance 5069 is not merely a moratorium on the existing sign regulations as plaintiff argues.  The text of Ordinance 5069 suggests that it was enacted to allow the Board time to study and consider implementing new regulations related to new off-site advertising signs in light of land use, health and safety, and esthetics concerns.  A draft of a proposed new ordinance appears consistent with the prohibition in

United States District Court
For the Northern District of California

Ordinance 5069.  Moreover, the Board has expressed an explicit intent to not revert to the existing regulations.  Stott has offered no factual support to show that the County will revert to its existing regulations.  *Compare City of Mesquite*, 455 U.S. at 389 & n.11 (mootness not found where city had previously reverted to the old regulations once it received a court judgment and announced that it was not prohibited from reenacting the alleged unconstitutional regulations if the district court judgment was vacated).  Therefore, the court cannot conclude that there has been a showing warranting an exception to the general rule that if the challenged law is repealed or expires the case becomes moot.

A court may also permit "suits for prospective relief to go forward despite abatement of the underlying injury where the following two circumstances were simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990) (internal quotations, edit, and citation omitted).  However, this exception is not met where "there is no 'reasonable expectation' that [plaintiff] will suffer the same wrong again."  Here, the facts do not support a finding that Stott will suffer the same wrong.  As alleged, its permits were denied because the County exercised biased discretion against its proposed billboards.  However, as the County argues, under Ordinance 5069 as extended by Ordinance 5072, new billboards will be prohibited as a matter of local law rather than as a matter of discretion.  Such billboard prohibiting ordinances have been upheld against constitutional challenge.  *See Maldonado v. Morales*, — F.3d — 2009 WL 455526 *6 (9th Cir. 2009); *Metro Lights, L.L.C. v. City of Los Angeles*, 551 F.3d 898, 914 (9th Cir. 2009).

### 2.    Bad Faith

Stott also argues that the County enacted Ordinance 5069 expressly to frustrate Stott's plans to obtain permits to construct three billboard structures in Monterey County and, therefore, the Ordinance is invalid as against Stott.  Mootness may be avoided "where a repeal or amendment is part of a bad faith attempt by the government to avoid judicial review or where the government has enacted a substantially similar law."  *Get Outdoors II, L.L.C. v. City of Lemon Grove*, 378 F. Supp.

2d 1232, 1239 (S.D. Cal. 2005) (citing *City of Mesquite*, 455 U.S. at 289).  Stott argues that the County acted in bad faith based primarily on the timing of Ordinance 5069's enactment three days before Stott filed its motion for summary judgment.

The court acknowledges that the text of Ordinance 5069 is not clear as to its purpose and timing.  The text, as drafted by County Counsel, expresses that the Ordinance was necessary in light of the potential inconsistencies presented by the various measures placed on the June 2007 ballot, yet purports that the Board's intent is to ensure that a new ordinance will continue the ban on all new billboards *whatever the results of the June ballot*.  Thus, it is unclear whether the Board intends to perform a study to determine whether all new billboards should be banned or whether it will seek to do so regardless of any studies.  Nevertheless, it is not the role of the court to second guess the legislature's decisions.  Moreover, although Ordinance 5069 prohibits any further permits for new billboards, it appears to be only another enactment in a succession of actions by the County since the 1980s (and well before Stott's applications and suit) to restrict the addition of new billboards.  These actions appear to have been taken primarily to further the County's interest in esthetics which, as discussed further below, is a valid basis for restricting the construction of new billboards. The County's disdain is not for Stott but for billboards generally.

### 3.       Allegation that Stott was Singled Out

Stott argues that because the ordinances were enacted as an emergency measure and essentially to frustrate its plans to obtain its permits, the ordinances are invalid.  Stott points to the line of cases beginning with *Yick Wo v. Hopkins*, 118 U.S. 356 (1886) for the principle that even a facially neutral law can deny a person equal protection if applied in a way that singles him out. More applicable to these facts, Stott cites *Sunset View Cemetery Association v. Kraintz*, 196 Cal. App. 2d 115 (1961), in which the court ordered a county to authorize a cemetery's construction of a mortuary where the county had changed its regulations to specifically frustrate the cemetery's plans. The general rule, however, is that "an administrative body ordinarily may deny a building permit when there is a zoning change after the permit application is made and the contemplated use is no longer permitted." *Delta Wetlands Properties v. County of San Joaquin*, 121 Cal. App. 4th 128, 147 (2004) (upholding ordinance imposing limits on water storage projects).  A constitutional concern

**United States District Court**
For the Northern District of California

1   arises only where the administrative body's "sole purpose" in enacting the laws is to frustrate a

2   particular person.  *Id.*  Such cases are distinguishable from Stott's situation because the County's

3   ordinances banning billboards apply countywide.  *Cf. id.*, at 150.  As the California Court of Appeal

4   distinguished in *Delta Wetlands Properties*, the current case is distinct from the *Sunset View* lines of

5   cases because here no "particular property was targeted with greater restrictions than similarly

6   situated property."  *Id.* at 149.  Indeed, the County has been quite clear in expressing its disdain not

7   for Stott, but for billboards generally.  Accordingly, the ordinances are not invalid as violating Stott's

8   right to equal protection.

9              **4.**     **Claims Mooted**

10       The court therefore concludes that defendants have adequately shown that plaintiff's first

11   through third claims for declaratory and injunctive relief are rendered moot by the County's adoption

12   of Ordinance 5069.  In addition, plaintiff's fourth claim for damages derives from its contentions that

13   it should have been granted the applied-for permits but for defendant's violations of its First and

14   Fourteenth Amendment rights.  These claimed losses are "loss of income, profits, business

15   reputation and other general damages" in excess of $250,000.  Compl. ¶50.  These appear to be

16   losses incurred by Stott in pursuing its permit applications and estimated loss of profits it would

17   have secured had it been granted the permits.  *See, e.g.,* Moravec Decl. ¶¶ 17-21.  However, as

18   defendant argues, under California law, which governs plaintiff's property rights, a party has a

19   vested right in a permit only after the permit is issued and the party has incurred substantial expense

20   in reliance on the permit.  *Avco Cmty. Developers, Inc. v. South Coast Reg'l Comm'n*, 17 Cal. 3d

21   785, 791 (1976); *see also Davidson v. County of San Diego*, 49 Cal. App. 4th 639, 646 (1996).[1]

22

23   [1]     Although it is unclear from the County's briefings whether it moves for summary judgment
24   on plaintiff's fourth claim for damages based on an alleged violation of the First Amendment and the Due Process Clause only on mootness grounds or on the merits, the court concludes that plaintiff's fourth claim has been rendered moot because the primary contention at issue—that is plaintiff's
25   request for declaratory and injunctive relief that its permits be issued—has been rendered moot by Ordinance 5069.  *See Lewis*, 494 U.S. at 480 ("Where on the face of the record it appears that the
26   only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even
27   constitutional issues obtained, solely in order to obtain reimbursements of sunk costs."); *see also Get Outdoors v. City of Chula Vista*, 407 F. Supp. 2d 1172, 1179 (S.D. Cal. 2005) (same).  In any event,
28   the court addresses the merits of plaintiff's First Amendment and Due Process Clause claims separately in *infra* §§ C-D based on plaintiff's motion for partial summary judgment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT

United States District Court
For the Northern District of California

1   Finally, the court finds that plaintiff's remaining claims are rendered moot for the same

2   reasons that its first through fourth claims are rendered moot.  Plaintiff's fifth through eighth claims

3   seek (1) a traditional writ of mandate ordering defendant to vacate the Board's decisions denying

4   plaintiff's appeals, ordering defendant to approve plaintiff's applications, and ordering defendant to

5   pay plaintiff's damages claim; and (2) administrative mandamus as to all three permit applications

6   ordering the County to vacate its denial of plaintiff's permit applications, ordering defendant to issue

7   the requested permits, and ordering defendant to pay plaintiff's damages claim.  *See* Compl. ¶¶ 7-18.

8   These claims seek relief that has been rendered moot by Ordinance 5069.  *See Lewis*, 494 U.S. at

9   477 ("To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened

10   with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial

11   decision.").

12   However, even if Ordinance 5069 does not moot plaintiff's claims, the court concludes, for

13   the reasons set forth below, that there is no genuine issue of material fact with respect to plaintiff's

14   claims that the County has violated plaintiff's First Amendment rights or its rights under the Due

15   Process Clause.

16   **C.       First Amendment**

17   Plaintiff's first claim alleges that the County's sign ordinance is unconstitutional "insofar as it

18   requires a use permit" because such a permit is a prior restraint on "its right to engage in a protected

19   First Amendment activity."  Plaintiff claims the County's ordinance does not set forth "narrow,

20   objective and definite standards" and "grant[s] to County officials unfettered discretion to allow or

21   deny persons the right to engage in protected First Amendment speech."  Compl. ¶ 22.  Plaintiff's

22   second claim challenges the County's ordinance as applied.  The County argues that because Stott

23   only constructs billboards, its claims do not involve speech, but only one medium of speech.

24   However, as the Supreme Court has held, "billboards . . . like other media of communication,

25   combine communicative and noncommunicative aspects" and "regulation of the noncommunicative

26   aspects of a medium often impinges to some degree on the communicative aspects."  *Metromedia,*

27   *Inc. v. City of San Diego*, 453 U.S. 490, 502 (1981).  Thus, a court "must reconcile the government's

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT                                                                 12

regulatory interests with the individual's right to expression." *Id.* As noted above, Stott's billboards are used to display both commercial and non-commercial speech. The constitutional protection afforded commercial speech differs from that afforded non-commercial speech and thus warrants separate discussion. *Id.* at 513.

### 1.    Commercial Speech

The County's ordinance provides that before issuing a use permit, the findings of the Appropriate Authority shall be:

> The establishment, maintenance, or operation of the use or structure applied for, will not, under the circumstances of the particular case, be detrimental to health, safety, peace, morals, comfort, and general welfare of persons residing or working in the neighborhood of such proposed use; or be detrimental or injurious to property and improvement in the neighborhood; or to the general welfare of the County.

Def.'s RJN, Ex. A § 21.74.050. Stott submits that this provision confers "unbridled discretion" upon County officials because it "does not set forth any fixed, objective standards for determining whether a particular project may be 'detrimental to health, safety, peace, morals, comfort and the general welfare of persons residing or working in the neighborhood.'" *See* Pl.'s Mot. Summ. J. at 8:19-24. "[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988). This applies to city ordinances pertaining to restraints on the methods of communication. *See id.* ("[A] law or policy permitting communication *in a certain manner* for some but not for others raises the specter of content and viewpoint censorship.") (emphasis added). Although a city "may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not condition that speech on obtaining a license or permit from a government official in that official's boundless discretion." *Id.* at 764. Here, however, the court concludes that the County's ordinance does not constitute a prior restraint on speech as plaintiff proposes.

First, the ordinance is not facially unconstitutional. Although not a case concerning First Amendment rights with respect to billboards, the Supreme Court's holding in *City of Lakewood* is instructive. There, the city's ordinance set forth *no standards* upon which city officials based decisions regarding permits: "The Mayor shall either deny the application [for a permit], stating the

reasons for such denial or grant said permit subject to the following terms. . . . [These] terms, includ[e]: (7) such other terms and conditions deemed necessary and reasonable by the Mayor." *Id.* at 769 (internal quotations omitted) (first edit in original). In concluding that the ordinance constituted a prior restraint on speech, the Court held that it was "apparent on the face of the ordinance itself contains no explicit limits on the mayor's discretion" and "nothing in the law as written requires the mayor to do more than make the statement 'it is not in the public interest' when denying a permit application." *Id.*

Here, the ordinance requires the appropriate County official to make *findings* that there will not be any detrimental effects to health, safety, peace, morals, comfort, and general welfare of persons residing or working in the neighborhood, or detrimental or injurious to property and improvement in the neighborhood or to the general welfare of the County. Rather than being conferred with unbridled discretion, the official is charged with making findings affecting specific concerns enumerated in the ordinance. By contrast, the ordinance in *City of Lakewood* contained no enumeration of the city's interests that would justify denying a permit. As the *City of Lakewood* Court explained, it cannot be presumed that the city officials would deny a permit only based on "reasons related to the health, safety, or welfare of Lakewood citizens." Rather, "[t]he doctrine requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *Id.* at 770. Here, unlike in *City of Lakewood*, the "limits" are made implicit in the text of the ordinance. In other words, the ordinance does not require the court to presume that denial of a permit is based on findings of detriment to health, safety, welfare, or property.

Second, applying the test and reasoning set forth in *Metromedia,* the ordinance's restrictions are not unconstitutional. *Metromedia* involved the constitutionality of the City of San Diego's prohibition of all new outdoor advertising display signs, which include billboards. As to the resulting effect of the billboard ban on commercial speech, the Court held that a city's esthetic and traffic safety interests are sufficiently substantial to ban the construction of billboards. The Court reaffirmed that the applicable test for determining the validity of government restrictions on

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    commercial speech is as set forth in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447

2    U.S. 557, 563-66 (1980):

> (1) The First Amendment protects commercial speech only if that speech concerns
> lawful activity and is not misleading. A restriction on otherwise protected commercial
> speech is valid only if it (2) seeks to implement a substantial governmental interest,
> (3) directly advances that interest, and (4) reaches no further than necessary to
> accomplish the given objective.

6    453 U.S. at 507.  The City of San Diego's ordinance prohibited all "outdoor advertising display

7    signs," subject to certain exceptions, to eliminate traffic hazards to pedestrians and motorists and to

8    preserve and improve the appearance of the city.  *Id.* at 493.  The Court applied the *Central Hudson*

9    test and concluded that the ordinance was valid as to commercial speech.  Specifically, the Court

10   held that traffic safety and appearance of the city were substantial governmental goals.  *Id.* at 507-

11   08.  The Court also reasoned that the ordinance is not broader than necessary because, "[i]f the city

12   has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then

13   obviously the most direct and perhaps the only effective approach to solving the problems they

14   create is to prohibit them."  *Id.* at 508.

15       The Court then considered whether the ordinance "directly advanced" the expressed

16   governmental interests.  The Court noted that it hesitated to disagree with the common-sense

17   judgments of local lawmakers as to concerns of traffic hazards and esthetics.  *Id.* at 509-10.  In

18   particular, the Court stated "[i]t is not speculative to recognize that billboards by their very nature,

19   wherever located and however constructed, can be perceived as an 'esthetic harm.'"  *Id.* at 510.

20   While the Court acknowledged that "[s]uch esthetic judgments are necessarily subjective, defying

21   objective evaluation," and thus "must be carefully scrutinized to determine if they are only a public

22   rationalization of an impermissible purpose," the Court noted that there was no claim in that case

23   that the city had the ulterior motive of suppressing speech.  *Id.*

24       Here, the reasoning utilized by the *Metromedia* Court in evaluating the governmental

25   interests and the breadth of the ordinance show that the County's ordinance is not unconstitutional.

26   The ordinance expresses that the concerns that may support a denial of a permit are safety, health,

27   general welfare, and injury to property or improvement in the neighborhood and County.  An

28   ordinance setting forth that a permit may not be granted upon findings of such detriments does not

1  appear to be broader than necessary based on the same rationale set forth in *Metromedia*.  It is not

2  disputed that the County has consistently expressed concern over the visual clutter and detriment to

3  esthetics caused by additional billboards.  Moreover, as in *Metromedia*, there is no contention of an

4  ulterior motive to suppress speech and the facts do not suggest such a motive.  Indeed, the

5  applications for permits request information only regarding the size, appearance, and location of the

6  proposed billboards.  The parties do not dispute that there is and has not been any reference in Stott's

7  applications, the public hearings, or elsewhere, identifying the messages proposed for any of the

8  billboards.

9        **2.**      **As Applied**

10        Stott also argues that the ordinance, as applied, violates the First Amendment in that it serves

11  as a *de facto* prohibition against all off-site billboards.  To the extent Stott argues that the County has

12  instituted a *de facto* ban on all billboard, *Metromedia* involved a complete ban on new billboards

13  and is squarely on point.  Thus, the same reasoning discussed in *supra* § C.1 applies.  As the *City of*

14  *Lakewood* Court explained, an ordinance that allows some to speak but not others, such as an

15  ordinance that prohibits the use of sound trucks without permission from the Chief of Police was

16  unconstitutional, but an ordinance absolutely banning the use of sound trucks is constitutional.  *See*

17  *City of Lakewood*, 486 U.S. at 750 (comparing *Saia v. New York*, 334 U.S. 558 (1948), with *Kovacs*

18  *v. Cooper*, 336 U.S. 77 (1949)).

19        **3.**      **Noncommercial Speech**

20        Although the County's ordinance may also affect non-commercial speech, it does not do so in

21  an unconstitutional manner here.  As noted above, Stott's billboards serve as a medium for both

22  commercial and non-commercial speech.  With respect to noncommercial speech, the government

23  "may not choose the appropriate subjects for public discourse."  *Metromedia*, 453 U.S. at 515.  In

24  *Metromedia*, the Court found that the City of San Diego's ordinance unconstitutionally restricted

25  noncommercial speech because the ordinance specifically permitted on-site commercial messages

26  related to the commercial use of the premises, but prohibited the use of otherwise identical

27  billboards to carry noncommercial messages.  *Id.* at 513.  Here, the situation is different.  The

28  County's ordinance does not distinguish between the type of speech or content of the message in the

United States District Court
For the Northern District of California

1  determination of whether a permit is issued.  Moreover, although exceptions to the permit

2  requirement are made for various noncommercial speech, Stott fails to point to any particular

3  exception that renders the permit ordinance unconstitutional.  Unlike in *Metromedia*, there is no

4  contention or showing that the ordinance improperly restricts noncommercial speech more

5  stringently than commercial speech.

6       **D.     Due Process**

7       Plaintiff also claims that it was denied due process because it did not receive a fair and

8  impartial hearing with respect to its permit applications because several of the commissioners and

9  supervisors were biased against billboards in general.  "The Fourteenth Amendment's Due Process

10  Clause protects persons against deprivations of life, liberty, or property; and those who seek to

11  invoke its procedural protection must establish that one of these interests is at stake.  *Wilkinson v.*

12  *Austin*, 545 U.S. 209, 221 (2005).  "[T]he existence of a protected property interest hinges on

13  whether state law confers a 'reasonable expectation of entitlement.'"  *Stivers v. Pierce*, 71 F.3d 732,

14  740 n.4 (9th Cir. 1995) (citation omitted).  A plaintiff may establish that there has been a violation of

15  its due process rights either by showing actual bias as demonstrated by the proceedings or

16  surrounding circumstances or that the adjudicator has a pecuniary or personal interest in the outcome

17  of the proceedings.  *Id.* at 741.  However, "[i]n attempting to make out a claim of unconstitutional

18  bias, a plaintiff must 'overcome a presumption of honesty and integrity' on the part of

19  decision-makers."  *Id.; see also Bakalis v. Golembeski*, 35 F.3d 318, 326 (7th Cir. 1994) ("[T]here is

20  a presumption that those making decisions affecting the public are doing so in the public interest.").

21       Here, plaintiff claims there was actual bias.  Plaintiff points to comments made by

22  Supervisors Calcagno and Potter at the hearing on the Eastman Property application.  Supervisor

23  Calcagno noted that the County had historically taken a strong position against billboards and that

24  the people of Monterey County do not want commercial signs.  *See* Ex. N Supp. Pl.'s Mot. Summ. J.

25  at 23-24.[2]  Supervisor Potter apparently concurred with these statements.  Supervisor Potter also

26

27  _____

28  [2]     The court notes that plaintiff's exhibit N as well as a number of exhibits submitted by
plaintiff are not accompanied by a sworn declaration.  The court need not credit these submissions as
proper parts of the evidentiary record for the present motions.  *See* Fed. R. Civ. P. 56(e).  Exhibit N
is the transcript of the March 1, 2005 proceedings before the Board of Supervisors.  Defendant does

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT

**United States District Court**
For the Northern District of California

1   reiterated that there is a consistent policy of trying to reduce the number of billboards in the County

2   in his deposition.  On March 7, 2005, prior to the appeal of the Borba Property and Tannahill

3   Property denials, Supervisor Calcagno responded to a citizen letter, stating that he shared her

4   opposition to billboards along Highway 101, such as the proposed Tannahill billboard.[3]  Finally,

5   plaintiff notes that Supervisor Calcagno proposed and the County adopted a moratorium on

6   billboards and endorsed a policy discouraging billboards and restricting them to heavy commercial

7   and industrial zones shortly after the appeal as to the Tannahill billboard was denied.[4]

8           Even assuming plaintiff's proffered exhibits are credited as evidence properly before this

9   court, the court is not persuaded that plaintiff has presented evidence to overcome the presumption

10  that the Planning Commission or the Board of Supervisors acted with honesty and integrity.

11  Plaintiff has pointed only to general statements made by supervisors of their personal viewpoints on

12  the subject of the number of billboards in the County.  *See Stivers*, 71 F.3d at 744 (holding that

13  reports of derogatory statements by an adjudicator about the applicant while the application was

14  pending before the Board, standing alone, was clearly insufficient to demonstrate actual bias); *cf.*

15  *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1224 (9th Cir. 1990) ("Adverse rulings alone are

16  not sufficient to require recusal, even if the number of such rulings is extraordinarily high.").

17  Although these statements demonstrate that the County was working toward a policy to reduce the

18  number of billboards for esthetic purposes, these statements do not show that the Board would not

19  exercise their duties in accordance with the then-effective ordinance when evaluating Stott's

20  applications.  *Compare Taylor v. Hayes*, 418 U.S. 488, 501-02 (1974) (statements demonstrating

21  adjudicator's unfavorable personal attitude toward the petitioner and the running controversy

22  between the two support finding of actual bias).  Moreover, concerns of local esthetics is a proper

23

24  _____

25  not dispute the authenticity of this transcript.  The court takes judicial notice of this document
    pursuant to Fed. R. Evid. 201.

26  [3]      Plaintiff cites to its exhibit Y, which is not submitted in conformance with Fed. R. Civ. P.
    56(e).  *See supra* note 2.

27

28  [4]      Plaintiff cites to its exhibits CC and FF, which are not submitted in conformance with Fed.
    R. Civ. P. 56(e).  *See supra* note 2.

United States District Court
For the Northern District of California

1  grounds for denying an application to erect a billboard; the record does not support a finding that the

2  supervisors opposed its billboard permit applications for any reason other than their concern of the

3  visual clutter created by too many billboards.  *Cf.  Cunningham v. City of Overland*, 804 F.2d 1066,

4  1069 (8th Cir. 1986) (due process violated where license was denied even after city attorney

5  informed the board that there were no legal grounds for denial).

6  Finally, the record does not show that there were any irregularities in the treatment given

7  Stott's applications compared to other applications.  *See Stivers*, 71 F.3d at 745 ("It is appropriate to

8  look to irregularities in the treatment that a license applicant receives from the Board in determining

9  whether the decision-making process was affected by impermissible bias on the part of one of its

10  members.").  Stott's applications progressed through the usual channels without noted delays.  A

11  public hearing was held by the Planning Commission and by the Board of Supervisors.

12  Accordingly, the court does not find that these statements raise an issue of triable fact as to whether

13  plaintiff's due process right to a fair and impartial hearing was violated based on actual bias against

14  it.

15  **E.    Recent Decisions Uphold Bans of Billboards**

16  Stott in a supplemental submission calls the court's attention to *Metro Lights, LLC v. City of*

17  *Los Angeles*, 488 F. Supp. 2d 927 (C.D. Cal) in which the district court held that the City's general

18  prohibition of off-site signs was an unconstitutional restraint on commercial speech because the City

19  allowed off site signs on the public right of way under the City's bus shelter program.  However, that

20  decision was reversed on appeal.  The Ninth Circuit held that the ordinance was not

21  unconstitutionally underinclusive under the First Amendment.  *Metro Lights, L.L.C.*, 551 F.3d at

22  904-11 .  It acknowledged that if a city has a sufficient basis for believing that billboards are traffic

23  hazards or unattractive, it can prohibit them.  *Id.* at 907.

24  Similarly, in *Maldonado*, 2009 WL 455526 at *6 the Ninth Circuit held that California's

25  Outdoor Advertising Act, prohibiting all off-site billboard advertising, did not amount to a

26  suppression of all signs, as would violate the First Amendment because non-commercial messages

27  and on-site advertising were not prohibited.

28  //

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT

1

**III.  ORDER**

2        For the foregoing reasons, the court GRANTS defendant's motion for summary judgment and

3    DENIES plaintiff's motion for summary judgment.

4

5    DATED:        3/10/2009

_Ronald M Whyte_

_____
RONALD M. WHYTE
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Gary S. Mobley                    gmobley@ckjw.com
Randal Ralph Morrison             rrmatty@yahoo.com

**Counsel for Defendants:**

Leslie John Girard                girardlj@co.monterey.ca.us

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/10/2009                                    TSF
                                              **Chambers of Judge Whyte**

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT—No. C-06-00891 RMW
SPT